WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ares Funding, L.L.C., ,<br><br>    Plaintiff,<br><br>vs.<br><br>MA Maricopa, L.L.C., et al.,,<br><br>    Defendants. | No. cv-06-1102-PHX-ROS<br><br>**ORDER** |

Pending before the Court is Defendants' Motion to Dismiss (Doc. 92). For the reasons stated herein, this motion will be denied in part and granted in part.

**BACKGROUND**

Defendant MA Maricopa, LLC ("Maricopa"), an Arizona company, contacted Plaintiff Ares Funding, LLC ("Ares"), a Utah company, to obtain a multi-million dollar loan for the purpose of purchasing Arizona real property. Ares was not licensed under Arizona law as a commercial mortgage broker.

Maricopa and Ares entered into an agreement that, once the loan was funded, Ares would receive a mortgage-broker's fee of $750,000. Ares subsequently assigned the right to fund the loan to a third-party, California Mortgage and Realty, Inc. ("CMR"), a California company. First American Title Insurance Company ("First American"), an Arizona company, processed the loan and acted as the escrow agent. As such, First American held

the $750,000 for the agreed-upon fee in escrow. Maricopa subsequently instructed First American to release $53,000 of this $750,000 to Ares and the balance to Maricopa.

Ares filed suit against Maricopa, Steve Northroup and Michael McInerney, who are managing members of Maricopa, and First American, alleging the following: (a) against Maricopa – breach of contract, unjust enrichment, conversion/assumpsit, fraud, and civil conspiracy; (b) against Northroup and McInerney – unjust enrichment, conversion/assumpsit, fraud, tortious interference with contract, and civil conspiracy; and (c) against First American – breach of contract, interference with contract, and civil conspiracy.

The Court dismissed Ares's breach-of-contract claim against Maricopa only and its unjust enrichment claim against Maricopa, Northroup, and McInerney. Arizona forbids a person from receiving compensation in connection with arranging a mortgage loan if that person is not licensed in Arizona. A.R.S. § 6-909(B). Because Ares was not licensed in Arizona and did not qualify for an exemption from the licensing requirement, the Court dismissed the dependent claims, the breach-of-contract claim against Maricopa and unjust enrichment claim against Maricopa, Northroup, and McInerney.

Defendants have filed a motion to dismiss the remaining claims.

## STANDARD OF REVIEW

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). When reviewing a motion to dismiss, the Court accepts as true all material allegations in the complaint and construes them in a light most favorable to the plaintiff. Schmier v. U.S. Court of Appeals for Ninth Circuit, 279 F.3d 817, 820 (9th Cir. 2002). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964–65 (2007) (internal quotations, citations, and alterations omitted).

**ANALYSIS**

Defendants have moved to dismiss Ares's remaining claims on the grounds that recovery in tort is barred by: (1) the licensing statute; and (2) the economic loss doctrine.[1]

**I.   The Licensing Statute Does Not Bar Ares's Tort Claims.**

Defendants assert that Ares's tort claims are barred by the licensing statute because the underlying contract is unenforceable and the statute prohibits recovery of "compensation."

"Contract law and tort law[, however,] each protect distinct interests." Carstens v. City of Phoenix, 75 P.3d 1081, 1084 (Ariz. App. 2003). Contract law provides promised-based recovery, and tort law provides duty-based recovery. Id. "The duty not to commit fraud is obviously not created by a contractual relationship and exists . . . even when there is no contractual relationship between the parties at all." Morris v. Achen Constr. Co., 747 P.2d 1211, 1213 (1987). Thus, Ares may recover in fraud even if the underlying contract is unenforceable.[2]

Defendants nonetheless maintain that the licensing statute's language prohibiting compensation also prohibits any recovery in tort. The statute provides in relevant part: "A person is not entitled to receive compensation in connection with arranging for or negotiating a mortgage loan if such person is not licensed pursuant to this article." A.R.S § 6-909(B). "Compensation" is defined as "anything of value or any benefit including points, commissions, bonuses, referral fees, loan origination fees and other similar fees but excluding periodic interest resulting from the application of the note rate of interest to the outstanding principal balance remaining unpaid from time to time." Id. § 6-901(2).

The fact that the Arizona legislature specifically identified certain types of compensation that were prohibited and those types of compensation all sounded in contract, means that it did not intend to exclude other types of "compensation" such as recovery based

---

[1] Arizona law applies to Ares's tort claims. (See Doc. 86 at 3-4).

[2] Ares correctly points out that the contract is not illegal, merely unenforceable.

- 3 -

in tort.

Moreover, the cases upon which Defendants rely are distinguishable.[3] In O'Conner v. Follman, 747 S.W.2d 216 (Mo. App. 1988), the licensing statute provided no person "shall bring or maintain an action in any court in this state for the recovery of compensation for services rendered." Id. at 221 (quoting Mo. Ann. Stat. § 339.160 (1986)). In Prowell v. Parks, 767 S.W.2d 633 (Tenn. 1989), the statute stated "no action or suit shall be instituted, or recovery be had by any person, in any court of this state for compensation for any act done or service rendered." Id. at 634 (quoting Tenn. Code Ann. § 62-13-105). And in RDP Dev. Corp. v. Schwartz, 657 A.2d 301(D.C. 1995), the statute barred "any action in the courts of the District for the collection of compensation for any services performed." Id. at 307 n.7 (quoting D.C. Code § 45-1926(c)). The licensing statutes in these cases explicitly deny unlicensed plaintiffs all access to the courts.

In contrast, the Arizona statute does not explicitly deny all access. Nor will the Court interpret it to so do. Because licensing statutes are generally enacted to prohibit, among other things, fraud, it would be curious to allow the licensing statute to be a tool to further such behavior. Without explicit direction from the Arizona legislature or the states' courts, this Court will not interpret the licensing statute to bar Plaintiff's access to the courts.

Further, "if possible, this [C]ourt construes statutes to avoid rendering them unconstitutional." Hayes v. Continental Ins. Co., 872 P.2d 668, 676 (Ariz. 1994). The Arizona Constitution's anti-abrogation clause,[4] prevents abrogation of all common law actions that existed in 1912 when statehood was achieved. Cronin v. Sheldon, 991 P.2d 231, 238-39 (Ariz. 1999). A common law cause of action for fraud existed in 1912. Id. at 241.

---

[3] Defendants also rely upon Lawrence v. Richman Group of Conn., LLC, 407 F. Supp. 2d 385 (D. Conn. 2005). The Lawrence court, however, did not deny plaintiff's negligent misrepresentation claim because of the licensing statute, but rather because plaintiff had failed to allege essential elements of the claim. Id. at 392.

[4] "The right of action to recover damages for injuries shall never be abrogated." Ariz. Const. art. 18, § 6.

- 4 -

Therefore, interpreting the licensing statute to abrogate recovery in fraud may be unconstitutional.

The licensing statute does not bar Ares's tort claims.

## II. The Economic Loss Doctrine Does Not Bar Ares's Tort Claims.

The economic loss doctrine "bars a party from recovering economic damages in tort unless accompanied by physical harm, either in the form of personal injury or secondary property damage." Carstens v. City of Phoenix, 75 P.3d 1081, 1083 (Ariz. App. 2003). This is premised on the theory that

> contract law and tort law each protect distinct interests.  Generally, contract law enforces the expectancy interests between contracting parties and provides redress for parties who fail to receive the benefit of their bargain. . . . Tort law, in contrast, seeks to protect the public from harm to persons and property.

Id.

The economic loss doctrine, however, is not a "blanket disallowance of tort recovery for economic losses." Salt River Project v. Westinghouse Elec. Corp., 694 P.2d 198, 209 (1984). Rather, recovery is barred when the claim alleges "only economic damages resulting from an alleged breach of contract." S.W. Pet Prod., Inc. V. Koch Indus., Inc., 89 F. Supp. 2d 1115, 1126 (D. Ariz. 2000), aff'd in part, rev'd in part, on other grounds, 32 Fed. App'x 213 (9th Cir. 2000) .[5]

Where, however, contract law has no mechanism to protect the wronged party, the economic loss doctrine will come into play. The economic loss doctrine, for instance, is not applicable to the tort of fraud in the inducement in Arizona. KD & KD Enterprises, LLC v. Touch Automation, LLC, CV 06-2083, 2006 WL 3808257, at *2-3 (D. Ariz. Dec. 27, 2006).

---

[5] Note, however, that "Arizona courts have never held that the application of the economic loss rule depends upon the plaintiff also having a viable contract claim against the defendant.  Instead, irrespective of a plaintiff's contractual claims against a defendant, the rule bars recovery of economic damages in tort because such damages are not cognizable in tort absent actual injury." Carstens, 75 P.3d at 1085.

- 5 -

One court explained that "contractual remedies for fraud will be either insufficient, or, more likely, unavailable.  In order to recover in contract on a fraud claim based on a promise made without present intention to perform, a party must first foresee, and then contract around, the very fraudulent statements that induced it into the contractual relationship." Moshir v. PatchLink Corp., CV 06-1052, 2007 WL 505344, at *5-6 (D. Ariz. Feb. 12, 2007). Conversely, the Ninth Circuit, applying Nevada law, has found that the economic law doctrine can apply to fraud in the execution or promissory fraud, writing that they can differ from fraud in the inducement in that they may "duplicate[] a contract claim by alleging misrepresentation about the characteristics or quality of goods that are the subject of the contract."  Giles v. GMAC, 494 F.3d 865, 880 (9th Cir. 2007).  "To determine whether contract or tort law applies in a specific case, the court must consider the facts of the case, 'bearing in mind the purposes of tort law recovery as contrasted with contract law.'" Salt River, 694 P.2d at 206 (quoting Arrow Leasing Corp. v. Cummins Arizona Diesel, Inc., 666 P.2d 544, 547 (Ariz. App. 1983)).

Here, Ares has alleged fraud in the inducement (Count Five), civil conspiracy (Count Seven), conversion (Count Four), and tortious interference with contract (Count Six). Defendants argue that each is barred by the economic loss doctrine. As discussed above, fraud in the inducement does not arise from the parties' agreement, and thus is not barred by the economic loss doctrine.

In its fourth count, Ares alleges that by diverting $697,700 that they knew belonged to Ares, Defendants committed the tort of conversion.  There exists an "independent duty under tort law not to take [ ] property without legal authority to do so," and therefore "the economic loss doctrine does not bar recovery of damages for breach of that duty." Giles, 494 F.3d 865. Ares's conversion claim is not barred by the economic loss doctrine.

Ares's sixth count alleges tortious interference with contract.  Two decisions from the District of Arizona suggest that this claim is barred under the economic loss rule.  See Finepoint Innovations, Inc. v. A.T. Cross Co., CV 04-1318, 2006 WL 3313688, at *3 (D.

- 6 -

Ariz. Nov. 13, 2006) ("Because Finepoint's intentional interference with business expectancy claim does not grow out of circumstances independent of its contractual relationship with Cross, it is barred by Arizona's economic loss rule."); QC Const. Prods. LLC v. Cohill's Bldg. Specialties, Inc., 423 F. Supp. 2d 1008, 1015 (D. Ariz. 2006) (dismissing interference with business relationship claim arising out of contractual obligations). However, as QC Construction Products makes clear, the key question is one of privity of contract: the economic loss rules applies when "there is a contract delineating the rights and duties of each parties." Id. at 1016, n. 7. The tort of tortious interference with contract requires, by definition, that a third party have interfered in the contractual obligations of one or both of the contracting parties.[6] If there is no privity of contract governing the relations of the parties, the tort cannot be asking for "only economic damages resulting from an alleged breach of contract." S.W. Pet Prod, 89 F. Supp. 2d at 1126.

Here, Plaintiff alleges that MA Maricopa, Steve Northroup and Michael McInerney "approached Ares in Utah in need of a several-million-dollar 'hard money' loan on a short term basis in connection with the purchase of certain real property located in Maricopa County, Arizona" and that "[a]s the terms of the lending transaction were being finalized with CMR, Ares and MA Maricopa specifically negotiated and agreed that $750,000 would be 'disburse[d] upon closing to Ares Funding, LLC from the loan proceed of the [CMR] loan." This constitutes a contract between the parties. Accordingly, Ares's tortious interference claim is barred by the economic loss doctrine.

Ares's civil conspiracy claim is based upon the underlying allegations of its claim for fraud, conversion, and tortious interference. It stands insofar as Ares alleges civil conspiracy to commit fraud and conversion, but fails as to civil conspiracy to commit tortious interference.

---

[6] See, e.g., Wagenseller v. Scottsdale Memorial Hosp., which quotes § 766 of the Restatement (Second) of Torts: "One who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract is subject to liability to the other. . . ."

### III.     Ares's Count Seven Allegations Are Sufficient Under Rule 9(b).

Defendants further argue that Plaintiff's civil conspiracy claim fails because it does not allege with any specificity that Defendants had an agreement to accomplish any tort alleged therein." Previously, this Court dismissed an earlier version of this claim for precisely that reason, writing that "Plaintiff failed to 'allege with sufficient factual particularity that defendants reached some explicit or tacit understanding or agreement.' Southern Union Co. v. Southwest Gas Corp., 165 F. Supp. 2d 1010, 1020 (D. Ariz. 2001) (citing Alfus, 745 F. Supp. at 1521)." (Doc. 14).  To survive a motion to dismiss under Rule 9(b), the plaintiff alleging civil conspiracy "must allege with sufficient factual particularity that defendants reached some explicit or tacit understanding." Alfus v. Pyramid Technology Corp., 746 F. Supp. 1511, 1521 (N.D. Cal. 1990).
"While Arizona does not recognize a civil action for conspiracy, it does recognize 'an action for damages caused by acts committed pursuant to a conspiracy." Wojtunik v. Kealy, 394 F. Supp. 2d 1149 (D. Ariz. 2005).  Under Arizona law, for a conspiracy action to lie, "two or more people must agree to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages." Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund, 38 P.3d 12, 36 (Ariz. 2002).

Here, in contrast to the first version of its complaint in which its civil conspiracy count made specific allegations only regarding the behavior of First American, Ares alleges facts tending to show the existence of a tacit understanding to commit one or more of the underlying torts. In particular, Ares alleges that (a) First American, Northroup, McInerney and MA Maricopa all knew and understood that Ares was entitled to receive $750,000 out of the proceeds of the loan," and (b) that "First American knew and understood that the changed instruction [not to transfer the money to Ares] contravened Ares' contractual right to the &750,000 payment, and agreed with MA Maricopa to deny Ares that payment." That is sufficient under Rule 9(b) to make out a claim of civil conspiracy to commit fraud or

- 8 -

conversion.

Accordingly,

**IT IS ORDERED** that Defendants' Motion (Doc. 72) is **DENIED IN PART** and **GRANTED IN PART.**

**IT IS FURTHER ORDERED** that Plaintiff's claim for tortious interference with a contract (Count 6) is **DISMISSED.**

DATED this 12th day of March, 2009.

Roslyn O. Silver
United States District Judge